per curiam:
Nos corresponde expresarnos nuevamente sobre el deber de los abogados de manejar con diligencia y honradez los bienes que reciben a nombre de sus clientes.
I
La Leda. Maggie Bonilla Berlingerie fue admitida al ejercicio de la abogacía en Puerto Rico el 2 de enero de 1990. En su desempeño como abogada, la querellada asu-mió la representación legal de la Sra. Myriam Batiz Váz-quez en una acción civil sobre divorcio y pensión alimenticia. Como resultado de ese pleito, el Tribunal de Primera Instancia fijó el pago de $2,300 por los gastos es-colares de los hijos, a pagarse en julio de cada año. Dicho foro ordenó que el ex esposo de la Sra. Myriam Batiz Váz-quez, el Ledo. Pedro I. Vidal, pagara $1,000 adicionales para reembolsar por los gastos escolares en que incurrió la señora Batiz Vázquez en el curso escolar anterior. Además, el foro de instancia ordenó el pago de $1,750 por los hono-rarios de abogado. La señora Batiz Vázquez y su ex esposo acordaron que el pago de los honorarios de abogado se rea-lizaría en diciembre de 2004. Conforme a lo anterior, el licenciado Vidal envió el referido pago de $3,300 ($2,300 para los gastos de regreso a clases del año en curso y $1,000 por los gastos del año escolar anterior) a la oficina de la querellada, la licenciada Bonilla Berlingerie.
Esta última recibió el cheque en su oficina el 1 de julio de 2004. Su secretaria llamó en múltiples ocasiones a la señora Batiz Vázquez para que fuera a recoger el cheque y *900 para que entregara el pago de los honorarios de abogado. La señora Batiz Vázquez suscribió una carta en la que au-torizó a su vecino para que recogiera el cheque en la oficina de la querellada. Este se personó a la oficina de la quere-llada con la referida carta y solicitó el cheque a nombre de la señora Batiz Vázquez, pero la querellada se negó a en-tregarle el cheque. Ante esta situación, la señora Batiz Vázquez presentó una queja contra la licenciada Bonilla Berlingerie en la que señaló que la querellada no le en-tregó el cheque enviado por su ex esposo porque no se le habían pagado los honorarios de abogado.
A raíz de estos hechos, y luego de efectuar la correspon-diente investigación, el Procurador General presentó un Informe en el que concluyó que la licenciada Bonilla Ber-lingerie incurrió en posible violación a los Cánones 23 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. El Pro-curador General sostuvo, entre otras cosas, que la abogada incumplió con su deber ético al retener el cheque pertene-ciente a su cliente y condicionar la entrega del mencionado cheque al pago de los honorarios de abogado, en abierta contravención a la normativa ética vigente.
Posteriormente, le ordenamos al Procurador General que presentara la querella contra la licenciada Bonilla Berlingerie. En cumplimiento con la referida orden, el Pro-curador General presentó la querella contra la letrada y le imputó dos cargos por violación a los Cánones 23 y 38 del Código de Ética Profesional, supra. Por su parte, en la co-rrespondiente contestación a la querella, la licenciada Boni-lla Berlingerie señaló que procedía desestimar la querella instada en su contra. Adujo que acordó verbalmente con la señora Batiz Vázquez que el cheque por $3,300 sería en-viado a la oficina de la querellada, y que de esa suma se saldarían los $1,750 por los honorarios de abogado. Además, señaló que no infringió el Canon 23, ya que dio pronta cuenta a la señora Batiz Vázquez del cheque que obraba en su poder para que lo recogiera, pero que la señora Batiz *901 Vázquez nunca lo hizo. Expresó que no entregó el cheque a la persona que visitó su oficina porque no tenía la certeza de que esa persona estaba autorizada por su dienta a recibirlo. Por último, argumentó que no tuvo la intención de retener el cheque, que siempre estuvo disponible para entregarlo y que no condicionó la entrega al pago de los honorarios de abogado adeudados.
Cumpliendo con la orden de este Tribunal, el Comisio-nado Especial celebró la vista a base de la cual sometió un informe en el que hizo las correspondientes determinacio-nes de hecho y conclusiones de derecho. Según surge de ese informe, la secretaria de la querellada llamó en múltiples ocasiones a la señora Batiz Vázquez para que fuera a reco-ger el cheque por $3,300 de la pensión alimenticia y para que entregara el pago de $1,750 por los honorarios de abogado. Luego, la señora Batiz Vázquez suscribió una carta en la que autorizó a su vecino para que recogiera el cheque en la oficina de la querellada. El 14 de julio de 2004 éste se personó a la oficina de la querellada con la referida carta y solicitó el cheque a nombre de la señora Batiz Vázquez. La querellada se negó a entregar el cheque a la persona que portaba la carta e hizo una anotación en la misiva suscrita y firmada por la señora Batiz Vázquez. En dicha anotación expresó que no podía entregar el cheque al alegado vecino de la señora Batiz Vázquez porque no lo conocía y porque no se había podido comunicar con esta última para discutir lo referente al pago de los honorarios de abogado adeudados. Además, en dicha anotación la que-rellada le sugirió alternativas a la señora Batiz Vázquez para el pago de los honorarios de abogado.
Por su parte, el 16 de julio de 2004 la señora Batiz Váz-quez le envío otra carta a la querellada en la cual le solicitó otra vez el cheque. La señora Batiz Vázquez nunca recibió contestación a la carta ni el cheque solicitado. La quere-llada intentó consignar el cheque en el Tribunal de Pri-mera Instancia donde se ventiló el pleito de divorcio en el *902 que representó a la señora Batiz Vázquez, pero el tribunal no permitió dicha consignación. Por esta razón, la quere-llada envío la carta a la oficina del ex esposo de la señora Batiz Vázquez, quien se encargó de enviarle el cheque a ésta.
A base de estos hechos y de la normativa vigente, el Comisionado Especial determinó que la retención inicial del cheque suscrito a favor de la señora Batiz Vázquez pudo estar justificada, ya que la querellada no pudo esta-blecer comunicación con su dienta. Sin embargo, el Comi-sionado Especial concluyó que la licenciada Bonilla Berlin-gerie infringió el Canon 23 del Código de Ética Profesional, supra, a partir del 14 de julio de 2004, fecha cuando se negó a entregar el cheque al vecino de la señora Batiz Váz-quez e hizo la anotación en la carta en la que condicionó la entrega del cheque al pago de los honorarios de abogado. A partir de esta fecha, transcurrieron catorce días hasta que la señora Batiz Vázquez recibió el cheque, periodo durante el que no hubo justa causa para la retención. El Comisio-nado Especial concluyó que el Procurador General no probó violación al citado Canon 38 del Código de Ética Profesional. Contamos con la comparecencia de la quere-llada y del Procurador General, y estamos en condición de resolver el recurso, por lo que procedemos a así hacerlo.
II
El Código de Ética Profesional establece las normas mínimas que rigen la conducta de los miembros de la profesión legal y promueven un comportamiento ejemplar por parte de los abogados en el desempeño de su labor. In re Gordon Menéndez I, 171 D.P.R. 210 (2007); In re Matos González, 149 D.P.R. 817, 819 (1999). A tales efectos, dicho cuerpo legal prescribe que los abogados deben a sus clientes un trato profesional que se caracterice por la capacidad, lealtad y honradez. In re Meléndez Figueroa, 166 *903 D.P.R. 199, 205 (2005). Esto responde a que la relación entre un abogado y su cliente está cimentada en la con-fianza absoluta que debe existir entre ambos. Robles Sanabria, Ex parte, 133 D.P.R. 739, 747 (1993). Conforme a este deber de lealtad y honradez, el Canon 23 del Código de Etica Profesional, supra, establece que cuando el letrado advenga en posesión de bienes o dinero del cliente debe dar pronta cuenta de este hecho a su cliente y nunca debe mez-clar esos bienes con los suyos. Según este deber ético reco-gido en el referido canon, la normativa jurisprudencial pro-híbe diáfanamente que los abogados retengan y dispongan inapropiadamente de cualquier suma de dinero que perte-nezca a su cliente. In re Gorbea Martínez, 149 D.P.R. 784, 788 (1999).
Sobre este particular, en In re Ramírez Ferrer, 147 D.P.R. 607, 613-614 (1999), sostuvimos que “ ‘la confianza entre abogado y cliente, en particular, el escrupuloso manejo de fondos, constituye elemento inseparable que se proyecta no sólo dentro del foro togado puertorriqueño, sino en el respeto y la estima ante la imagen pública’ ”. Asimismo, en el normativo In re Arana Arana, 112 D.P.R. 838, 844 (1982), establecimos que el hecho de haber devuelto el dinero retenido o haberlo retenido sin la intención de apropiarse de él permanentemente no libera al abogado querellado de una posible sanción disciplinaria. Por el contrario, “ ‘[l]a dilación en la devolución de los fondos de por sí es causa suficiente para tomar medidas disciplinarias contra el abogado’ ”. (Enfasis suprimido.) In re Ramírez Ferrer, supra, pág. 614. La retención de cualquier cantidad de dinero perteneciente al cliente viola el Canon 23 del Código de Etica Profesional, supra.
Conforme a este precepto ético, la transparencia de las relaciones entre abogado y cliente, y la naturaleza fiduciaria de esa relación basada en la honestidad absoluta es piedra angular para nuestro sistema jurídico. Por esta razón, reiteradamente hemos establecido que los abogados *904 no deben cobrar indebidamente los honorarios de abogado ni retener sin autorización dinero de los clientes.
Así también, el Canon 38 del Código de Ética Profesional, supra, exige a todo abogado desplegar una conducta que exalte la dignidad y el honor de su profesión, no sólo en el desempeño de ésta, sino también en el ámbito de su vida privada. Esta obligación ética responde a la confianza depositada en el abogado como miembro de la profesión legal. In re Sepúlveda, Casiano, 155 D.P.R. 193 (2001). Conforme a este principio, hemos expresado que “cada abogado es un espejo en el cual se refleja la imagen de la profesión, por lo que debe actuar con limpieza, lealtad y el más escrupuloso sentido de responsabilidad”. In re Curras Ortiz, 174 D.P.R. 502 (2008).
Ahora bien, hemos establecido que en los procedimientos disciplinarios la evidencia tiene que ser clara, robusta y convincente, no afectada por reglas de exclusión ni a base de conjeturas. In re Caratini Alvarado, 153 D.P.R. 575, 584 (2001). Este criterio requiere una carga probatoria más fuerte que la mera preponderancia de la prueba, toda vez que en estos procesos está en juego el título de un abogado y, por lo tanto, su derecho fundamental a ganarse el sustento. Id. Aunque el referido estándar de prueba no es susceptible de una definición precisa, la prueba clara, robusta y convincente ha sido descrita como “aquella evidencia que produce en un juzgador de hechos una convicción duradera de que las contenciones tácticas son altamente probables”. In re Rodríguez Mercado, 165 D.P.R. 630, 641 (2005).
Por último, según dispone la Regla 14 del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A, le corresponde al Comisionado Especial designado celebrar una vista para recibir la prueba. Al desempeñar una función similar al juzgador de instancia, el Comisionado Especial está en mejor posición para aquilatar la prueba testifical y *905 adjudicar credibilidad, por lo que sus determinaciones tác-ticas merecen nuestra mayor deferencia. In re Morales Soto, 134 D.P.R. 1012, 1016 (1994). Por lo tanto, aunque este Tribunal no está obligado a aceptar el informe de un Comisionado Especial en un procedimiento disciplinario contra un abogado, y podemos adoptar, modificar o recha-zar tal informe, de ordinario sostendremos las determina-ciones de hecho de éste, salvo que se demuestre prejuicio, parcialidad o error manifiesto. In re Morell, Alcover, 158 D.P.R. 791 (2003); In re Soto López, 135 D.P.R. 642, 646 (1994).
Conforme a la normativa antes expuesta, procedemos a dirimir la controversia ente nuestra consideración.
HH
Consideramos, basados en lo antes expuesto y en los hechos probados ante el Comisionado Especial, que la Leda. Bonilla Berlingeri faltó a los deberes impuestos por el Canon 23 del Código de Etica Profesional, supra. La doc-trina reseñada establece claramente que la mera retención de los bienes del cliente es causa suficiente para sancionar al abogado, de modo que no se socave el carácter fiduciario que debe imperar en la relación del abogado y su cliente. Es decir, el hecho de que no haya intención de ocultar los bienes o que éstos se devuelvan al cliente, no implica que el abogado no haya transgredido el referido canon.
Es cierto que la querellada dio "pronta cuenta” del che-que a su dienta y en varias ocasiones trató de comunicarse con ésta para que pasara a recoger el cheque y pagara los honorarios de abogado. Hasta ese momento, no es posible colegir que la querellada estaba reteniendo el cheque de su dienta en contravención al referido canon. Sin embargo, cuando la señora Batiz Vázquez envió a su vecino para re-coger el cheque, la querellada se negó a entregarlo e hizo *906 una anotación, a manuscrito, en la referida carta en la que expresó que no podía entregar el cheque a la persona que portaba la carta, porque no lo conocía y porque no se había podido comunicar con su dienta para discutir lo referente al pago de los honorarios adeudados. Además, en dicha anota-ción la querellada le sugirió alternativas a la señora Batiz Vázquez para el pago de los honorarios de abogado.
A partir de ese momento, la querellada infringió el Canon 23 del Código de Etica Profesional, supra, al retener el che-que de la señora Batiz Vázquez y condicionar su entrega a la discusión sobre los honorarios de abogado. No nos con-vence la querellada al aducir que se negó a entregar el che-que porque no tenía la certeza de que esa persona estaba autorizada por la señora Batiz Vázquez. Según se deduce de la carta que obra en el expediente ante nuestra considera-ción, en la anotación la querellada se dirigió expresamente a la señora Batiz Vázquez al escribirle que “por el hecho de no conocer [al] caballero [ni] haber hablado contigo para liqui-dar lo correspondiente a mis honorarios [de abogado] será imposible que lo entregue”. Apéndice de la Moción para No-tificar Prueba Documental, pág. 10. De estas expresiones se deduce que la querellada reconoció implícitamente que la persona fue enviada y autorizada por la señora Batiz Váz-quez a recoger el cheque. De lo contrario no hubiese hecho anotación alguna. Además, no hay duda de que la carta es-taba suscrita y firmada por la señora Batiz Vázquez. La querellada fungió como abogada de la señora Batiz Vázquez, por lo que tenía los medios para corroborar que la carta había sido enviada por su dienta. No lo hizo. Además, si genuinamente la querellada se hubiese negado a entregar el cheque porque desconocía si la persona estaba autorizada, debió hacer las gestiones pertinentes para hacerle llegar el cheque a su dienta, lo antes posible. Por el contrario, la querellada envió el cheque a la oficina del ex esposo de su dienta, luego de que intentó consignarlo en el tribunal donde se ventiló el pleito en el que representó a la señora *907 Batiz Vázquez. En ningún momento intentó enviar el che-que a la dirección de su cliente.
El comportamiento de la querellada transgredió los principios éticos que rigen la profesión legal. Existe evi-dencia clara, robusta y convincente de que la querellada retuvo el cheque porque no le habían pagado los honorarios de abogado. La anotación que la querellada hizo en la carta es prueba fehaciente de dicha intención. Es norma estable-cida que los abogados no deben retener sin autorización el dinero de sus clientes. La querellada presionó para cobrar sus honorarios reteniendo el cheque que pertenecía a su cliente. Al actuar de ese modo, mancilló la imagen de la clase togada y violentó el deber fiduciario que debe existir en toda relación abogado-cliente. Conforme a lo anterior, concluimos que la querellada infringió el Canon 23 del Có-digo de Etica Profesional, supra.
Por último, y contrario a lo que determinó el Comisio-nado Especial, entendemos que las actuaciones de la que-rellada desde el momento en que recibió el cheque a nom-bre de la señora Batiz Vázquez, reflejaron un mal manejo de la situación que dio margen a la apariencia de conducta impropia. Tan pronto la querellada recibió el cheque de la pensión alimenticia debió procurar que la señora Batiz Vázquez lo recogiera lo antes posible, y al darse cuenta de la falta de comunicación con ésta debió hacer las gestiones necesarias para hacerle llegar el cheque a su dienta. Sin embargo, la querellada devolvió el cheque al ex esposo luego de que se negó a entregarle el cheque a la señora Batiz Vázquez. Estas actuaciones, dan la impresión de que la querellada no quería entregar el cheque a su dienta y, por lo tanto, prefirió devolverlo por correspondencia al ex esposo de la señora Batiz Vázquez. Si la querellada hu-biese tenido la intención de entregar el cheque con la pre-mura que requiere la normativa ética vigente, le hubiese hecho llegar el cheque a su dienta. Al no hacerlo, infringió los postulados del Canon 38 del Código de Ética Profesio-nal, supra.
*908 IV
Según hemos establecido, al determinar la sanción disciplinaria que se le impondrá a un abogado que haya incurrido en conducta antiética, podemos tomar en cuenta los factores siguientes: (1) la buena reputación del abogado en la comunidad; (2) su historial previo; (3) si ésta constituye su primera falta y si ninguna parte ha resultado perjudicada; (4) la aceptación de la falta y su sincero arrepentimiento; (5) si se trata de una conducta aislada; (6) el ánimo de lucro que medió en su actuación; (7) resarcimiento al cliente, y (8) cualesquiera otras consideraciones, sean atenuantes o agravantes, que medien de acuerdo con los hechos. In re Quiñones Ayala, 165 D.P.R. 138 (2005).
Recientemente, en In re Delannoy Solé, 172 D.P.R. 95 (2007), nos enfrentamos a una situación similar a la que dio lugar a este recurso. En aquel caso, el abogado recibió un cheque dirigido a su dienta y se comunicó con ella pron-tamente para que lo recogiera. Surgieron desavenencias entre el abogado y su dienta, por lo que el letrado retuvo el cheque con la intención de acompañar a su dienta al banco y así cobrar los honorarios de abogado. En dicho caso sos-tuvimos que la conducta del abogado infringía el Canon 23 del Código de Etica Profesional, supra. Por esta razón, amonestamos enérgicamente al abogado.
Consideramos como agravante y altamente preocupante que en el caso que ahora nos ocupa el bien retenido cons-tituía la pensión alimenticia para los gastos escolares de los hijos menores de la señora Batiz Vázquez. Por otro lado, surge como atenuante que ésta es la primera falta de la querellada. Ella sólo retuvo el cheque por catorce días después de que la señora Batiz lo reclamara. A fin de cuen-tas, esta última recibió el cheque, de modo que no hubo un perjuicio sustancial a las partes.
*909 En atención a todo lo anterior, y a base del trato que en el pasado le hemos dado a situaciones como ésta, amones-tamos enérgicamente a la licenciada Bonilla Berlingeri. Le apercibimos que, de repetirse en un futuro la conducta que dio lugar a este recurso, seremos mucho más severos en nuestra sanción.

Se dictará sentencia de conformidad.