*In re* ANTONIO CÓRDOVA GONZÁLEZ.

*Número:* 2206          *Resuelto:* 9 de marzo de 1994

*Antonio Córdova González, pro se.*

PER CURIAM: Mediante Opinión y Orden de 19 de mayo de 1992, el Tribunal Federal para el Distrito de Puerto Rico suspendió al Lcdo. Antonio Córdova González de la práctica de la abogacía ante dicho foro. Esta decisión fue confirmada en apelación por el Tribunal Federal de Apelaciones para el Primer Circuito. El Tribunal Supremo de Estados Unidos se negó a revisarla el 29 de noviembre de 1993. En el ejercicio de nuestra facultad disciplinaria, debemos determinar las consecuencias derivadas de la referida decisión sobre la práctica de la profesión del abogado en nuestra jurisdicción.

I

Surge de la Opinión de 19 de mayo de 1992 del foro federal, *In the Matter of Antonio Córdova González*, Civil No. 91-1595, págs. 4, 10 y 15, que al licenciado Córdova González se le imputaron los cargos siguientes:

1.  Prestar una fianza hipotecaria (dos propiedades) para acusados en el caso Cr. No. 88-214(HL), siendo el lic. Córdova González el abogado de éstos. Las propiedades eran privativas de la esposa del abogado y estaban sujetas a un procedimiento bajo el Capítulo XI de la Ley de Quiebras. Violación a las Reglas Modelo 1.8(e) y 8.4 de la American Bar Association y violación a la Regla local 401.1(c)(3) del Tribunal Federal de Distrito para el Distrito de Puerto Rico.
2.  Obtener un préstamo por $100,000 de un cliente que el licenciado Córdova González representaba en un procedimiento criminal (Cr. No. 87-0029), sin que dicha persona contara con asesoramiento legal independiente. Violación a las Reglas Modelo 1.8(a) y 8.4 de la American Bar Association.
3.  Presentar escritos en casos criminales (Cr.86-419(PG) y 87-0029(JAF) utilizando lenguaje mordaz e irrespetuoso, el cual es abusivo y degradante hacia la ley, la profesión legal y el tribunal, en violación a las Reglas Modelo 3.5(c) y 8.4 de la American Bar Association. (Traducción nuestra.)

En virtud de una orden dictada por el Tribunal de Distrito Federal para el Distrito de Puerto Rico (en adelante Tribunal de Distrito Federal) el 14 de octubre de 1988, las alegaciones correspondientes al primer cargo imputado al licenciado Córdova González fueron referidas al Magistrado Hon. Justo Arenas. El 13 de abril de 1988 el magistrado presentó un informe sellado, el cual contenía sólo determinaciones de hecho.

El 31 de agosto de 1990 el foro federal designó un Comité de Abogados (en adelante Comité) conforme a la Regla 22 local([1]) y, posteriormente, a petición del licenciado

---

([1]) El Comité de Abogados estaba constituido por los Lcdos. Rafael Pérez Bachs, Roberto Busó Aboy y Rafael Ortiz Carrión.

Córdova González, emitió una orden mediante la cual especificaba los cargos referentes a su conducta profesional.

Luego de varios trámites y prórrogas, el licenciado Córdova González compareció y se celebró la vista final del caso el 19 de mayo de 1991. En el informe que rindió el Comité el 12 de septiembre de 1991, se recomendó que el licenciado Córdova González fuese suspendido del ejercicio de la profesión durante un (1) año. Se recomendó, además, como condición para reinstalar al abogado, requerirle que tomara y aprobara un curso de Responsabilidad Profesional en cualquiera de las tres (3) escuelas de derecho, y que tomara y aprobara la parte de la reválida federal sobre las Reglas Locales del Tribunal de Distrito.

Ante los hallazgos y la recomendación del Comité, el 19 de septiembre de 1991 el Tribunal de Distrito Federal dictó una orden de mostrar causa por la cual el abogado no debía ser objeto de una acción disciplinaria. Luego de la concesión de una prórroga, el licenciado Córdova González compareció mediante un escrito presentado el 20 de noviembre de 1991.

En síntesis, el Tribunal de Distrito Federal concluyó que el licenciado Córdova González todo el tiempo conocía el hecho de que las propiedades ofrecidas como fianza hipotecaria para sus clientes en el caso criminal (Cr.88–214(HL)) eran parte del procedimiento de quiebra iniciado por él y su esposa. La fianza fue prestada al día siguiente de haber asumido el licenciado Córdova González la representación legal de los acusados. Las propiedades en cuestión, las cuales pertenecían privativamente a la Sra. Mercedes Rivera Martínez, esposa del licenciado Córdova González, previamente habían sido ofrecidas como colateral para los acreedores asegurados en el pleito de quiebra. La prestación de estas propiedades como fianza, bajo estas condiciones, constituye una violación a la Sec. 549(a) del Código de Quiebras. Por ello, la fianza prestada era nula. Al ocultar esta información, hasta que el asunto fue llevado ante la

atención del Magistrado por la Oficina de la Fiscalía Federal, el licenciado Córdova González, a través de su señora esposa, le hizo falsas representaciones al Tribunal de Distrito Federal en violación a las Reglas 8.4(c) y 8.4(d) de las Reglas Modelo de la American Bar Association (ABA Model Rules of Professional Conduct) y a la Regla 401.1(c) local. El Tribunal desconocía que la fianza prestada era nula y, siguiendo el curso normal de los procedimientos, los acusados fueron dejados en libertad. El Tribunal concluyó que el licenciado Córdova González incurrió en una conducta perjudicial a la administración de la justicia.

En relación con el segundo cargo, el Tribunal de Distrito Federal determinó que no estaba en controversia que el licenciado Córdova González obtuvo un préstamo por la cantidad de $100,000 de un cliente suyo. Como colateral de dicho préstamo, el licenciado Córdova González ofreció un bien privativo de su esposa, propiedad que era parte del procedimiento de quiebra. Concluyó el foro federal que el licenciado Córdova González abusó de la confianza que el cliente tiene en que no hará contratos ilegales con su abogado. Al otorgarse el referido contrato de préstamo, existía la relación abogado-cliente entre las partes. El cliente se encontraba en prisión y no contó con, ni fue advertido de, su derecho a obtener asesoramiento legal independiente sobre la validez del pagaré. Por su conducta, el abogado, según determinó el Tribunal de Distrito Federal, quebrantó su obligación fiduciaria hacia su cliente, además de aprovechase injustamente de éste. Por ello, concluyó el Tribunal que el licenciado Córdova González violó las Reglas 1.8(a) y 8.4(c) de las referidas Reglas Modelo de la A.B.A.

Finalmente, en torno al tercer cargo imputado, el Tribunal de Distrito Federal evaluó las expresiones del licenciado Córdova González en sus escritos y consideró que éstos claramente denotan el lenguaje abusivo e irrespetuoso utilizado contra los jueces y los abogados de la parte

contraria. A su vez, el Tribunal de Distrito Federal ponderó la persistencia o el patrón seguido por el licenciado Córdova González en la utilización de ataques personales y lenguaje inapropiado en sus escritos. Concluyó el foro federal que, mediante sus escritos y comparecencias, el licenciado Córdova González violó las Reglas 3.5(c) y 8.4(d) de las Reglas Madelo de la A.B.A.

En su decisión de ordenar la sanción de suspensión de la práctica de la abogacía, el tribunal federal ponderó la evidencia que sostiene los primeros dos (2) cargos y concluyó que la conducta del licenciado Córdova González refleja un patrón de conducta engañosa tanto hacia el Tribunal como hacia sus clientes. Surge de la opinión del Tribunal de Distrito Federal que, además del patrón de conducta antes descrito, el licenciado Córdova González mostró una falta de arrepentimiento; un incumplimiento con las amonestaciones recibidas anteriormente, y una propensión a utilizar un lenguaje desmedido y difamatorio contra los jueces y la Oficina de la Fiscalía Federal.

La decisión del Tribunal de Distrito Federal fue confirmada en apelación por el Tribunal Federal de Apelaciones para el Primer Circuito (en adelante Tribunal Federal de Apelaciones) mediante opinión *Per Curiam* de 30 de junio de 1993, *In re Antonio L. Córdova González*, 966 F.2d 1334, 1993 W.L. 225584.

El Tribunal Federal de Apelaciones concurrió con la interpretación y el análisis que hizo el Tribunal de Distrito Federal sobre la conducta del licenciado Córdova González en cada uno de los cargos contra éste. En síntesis, concluyó que no abusó de su discreción el Tribunal de Distrito Federal al aplicar la sanción de suspensión de la práctica de la profesión al licenciado Córdova González. El Tribunal Federal de Apelaciones, al confirmar la decisión, tomó en consideración que el licenciado Córdova González es un abogado con alrededor de treinta (30) años de experiencia que ha sido objeto de procedimientos disciplinarios

anteriores.([2]) Conforme a la interpretación de dicho tribunal, cada uno de los cargos de conducta impropia del licenciado Córdova González lo exponía por separado a una sanción severa. Ante todas esas circunstancias concluyó que la sanción disciplinaria era proporcional a la ofensa. En relación con las alegaciones del licenciado Córdova González sobre la violación al debido proceso de ley durante la investigación y resolución de los cargos en su contra, concluyó el foro apelativo que el récord demostró que el abogado fue notificado de los cargos en su contra y tuvo la oportunidad de refutar o responder a éstos en cada etapa del proceso. En conformidad con la Regla 46(b) de Procedimiento Apelativo Federal, 28 U.S.C., y al no lograr el licenciado Córdova González rebatir los cargos ni explicar satisfactoriamente razón alguna para no aplicarse la misma sanción, el Tribunal Federal de Apelaciones le impuso la sanción de suspensión ante dicho foro.([3])

## II

"En Puerto Rico, donde el sistema democrático es fundamental para la vida de la comunidad y donde la fe en la justicia se considera factor determinante en la convivencia social, es de primordial importancia instituir y mantener un orden jurídico íntegro y eficaz, que goce de la completa confianza y apoyo de la ciudadanía.

"La consecusión de estos fines le impone a los miembros de la profesión jurídica, sobre quienes recae principalmente la misión de administrar la justicia y de interpretar y aplicar las leyes, el deber de desempeñar su alto ministerio con la mayor y más excelsa competencia, responsabilidad e integridad. Preámbulo del Código de Ética Profesional, 4 L.P.R.A. Ap. IX n.

---

([2]) Refiérase a *In re Cordova Gonzalez*, 726 F.2d 16 (1er Cir. 1984), e *In re Córdova González*, 125 D.P.R. 555 (1990).

([3]) Inconforme con la decisión del Tribunal Federal de Apelaciones para el Primer Circuito, el licenciado Córdova González acudió vía *certiorari* ante el Tribunal Supremo de Estados Unidos. El 29 de noviembre de 1993 dicho recurso fue denegado (*In re Córdova González*, 93–502; 62 L.W. 3375).

■ Todo abogado admitido a nuestra jurisdicción tiene una obligación ineludible de desempeñarse dentro del marco ético-moral delineado por los cánones de ética profesional.

Como norma general, el deber de conducirse de un modo decoroso, íntegro y compatible con los postulados de los cánones de ética profesional es de aplicación a todos los abogados admitidos en nuestra jurisdicción, *independientemente del foro ante el cual éste postule.*[4] Ello es así porque la naturaleza misma de la profesión de abogado le impide actuar al margen de la conducta esperada de éste *una vez es admitido al ejercicio de la profesión en nuestro país.* El mero hecho de ejercer la profesión *ante el foro federal o un foro administrativo no excluye* al abogado admitido en nuestra jurisdicción del ámbito de aplicación del Código de Ética Profesional. En esas circunstancias, al abogado *también* le son de aplicación las reglas de conducta profesional vigentes en el foro ante el cual postule.

■ Reiteradamente hemos sotenido que este Tribunal tiene facultad inherente para reglamentar la admisión y remoción del ejercicio de la abogacía. *In re Belén Trujillo,* 128 D.P.R. 949 (1991); *García O'Neill v. Cruz,* 126 D.P.R. 518 (1990); *In re Carreras Rovira y Suárez Zayas,* 115 D.P.R. 778 (1984); *In re Rojas Lugo,* 114 D.P.R. 687 (1983); *In re Roldán González,* 113 D.P.R. 238 (1982); *In re Ríos,* 112 D.P.R. 353 (1982); *In re Rodríguez Torres,* 106 D.P.R.

---

[4] Esta es la doctrina prevaleciente en la gran mayoría de los estados en Estados Unidos. Véanse, a modo de ejemplo: *Matter of Lieberman,* 592 A.2d 1060 (Cir. D.C. 1991); *Office of Disciplinary Counsel v. Hurley,* 787 P.2d 688 (Hawaii 1990); *Office of Disciplinary Counsel v. Smith,* 780 P.2d 87 (Hawaii 1989); *People v. Kochel,* 764 P.2d 68 (Colo. 1988); *Matter of Criares,* 513 N.Y.S.2d 159 (1987); *In re Evans,* 834 F.2d 90 (4to Cir. 1987); *Matter of Sussman,* 513 N.Y.S.2d 4 (1987); *People v. Montano,* 744 P.2d 480 (Colo. 1987); *In re Tumini,* 468 A.2d 707 (N.J. 1983); *Matter of Weaver,* 399 N.E.2d 748 (Ind. 1980); *Matter of Molliver,* 432 N.Y.S.2d 376 (1980); *Matter of Kaufman,* 406 A.2d 972 (N.J. 1979); *In re Isserman,* 345 U.S. 286 (1953); *Theard v. United States,* 228 F.2d 617 (5to Cir. 1956). Véanse, además: 2 *Law of Lawyering* Secs. 8.5:100–8.5:102, págs. 966–968 (Supp. 1992); D. Benjamin, *Reciprocal Discipline: An Approach to Lawyer Discipline,* 31 (Núm.3) How. L.J. 299 (1988); C.S. Lawrence, *In re Goldberg: Standards for Imposing Concurrent Reciprocal Bar Discipline,* 33 (Núm.4) Cath. U. L. Rev. 1165 (1984), entre otros.

698 (1978). Véanse, además: L.M. Negrón Portillo, *Ética Profesional*, 1993; M. Serapión Planas, *Análisis de la responsabilidad profesional del abogado puertorriqueño en las últimas dos décadas*, 50 (Núm.2) Rev. Jur. U.P.R. 285, 286 (1981); J.B. Fuster, *La misión del abogado en el mundo contemporáneo y sus implicaciones para las Escuelas de Derecho, el Tribunal Supremo y el Colegio de Abogados*, 36 (Núm.4) Rev. Jur. U.P.R. 579, 627–639 (1967).

█ Cuando a un abogado admitido al ejercicio de la profesión en Puerto Rico se le impone una sanción disciplinaria en otro foro judicial, *es imperativo evaluar la conducta en la que incurrió para determinar si amerita la imposición de una sanción disciplinaria en nuestra jurisdicción*. Procede, por lo tanto, considerar la situación del licenciado Córdova González.

## III

Desde el 2 de junio de 1992 este Tribunal le ordenó al licenciado Córdova González que mostrara causa por la cual no debía ser objeto de una sanción disciplinaria por los hechos que conllevaron la eliminación de su nombre de la lista de abogados que postulan ante el Tribunal de Distrito Federal. En particular, se señaló en nuestra resolución la posibilidad de que la referida conducta haya violado las disposiciones del Preámbulo del Código de Ética Profesional, del criterio general respecto a los deberes del abogado para con la sociedad y de los Cánones 5, 9, 21, 23, 24, 27, 29, 31, 35 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

Inicialmente, el licenciado Córdova González compareció y, en síntesis, planteó la violación al debido proceso, prejuicio, parcialidad y persecución política por su participación en las vistas públicas de la investigación del Cerro Maravilla (segunda parte) que llevó a cabo el Senado de Puerto Rico. El abogado solicitó una paralización de los procedimientos y, en el ejercicio de nuestra discreción, pos-

pusimos considerar el asunto hasta que se resolviera la apelación pendiente ante el Tribunal Federal de Apelaciones.

Posteriormente, el Procurador General interino, luego de que la decisión del Tribunal de Distrito Federal fue confirmada por el Tribunal Federal de Apelaciones, solicitó que se extendiera la sanción de suspensión de la práctica del licenciado Córdova González al foro local.

El abogado Córdova González compareció por escrito y presentó ante nuestra consideración una copia de su escrito de apelación ante el Tribunal Federal de Apelaciones. Nos informó, a su vez, de su petición de *certiorari* pendiente ante el Tribunal Supremo de Estados Unidos.

El licenciado Córdova González aduce varias causas por las cuales no debe ser objeto de sanción. En varios de sus escritos ante nos, el abogado alega (en síntesis) ser objeto de persecución política debido a sus declaraciones durante las referidas vistas sobre los sucesos del Cerro Maravilla (segunda parte). El licenciado Córdova González relaciona entre sí a tres (3) jueces federales y a dos (2) ex gobernadores al cuestionar la motivación del foro federal al llevar los procedimientos en su contra. Alega que por censurar o criticar abiertamente las actuaciones de los jueces y de la Oficina de la Fiscalía Federal se iniciaron los procedimientos disciplinarios en su contra.

En torno a la violación de los cánones de ética profesional de nuestra jurisdicción, el licenciado Córdova González alega ante nos que la opinión y orden del Tribunal de Distrito Federal estuvo fundada en unas conclusiones no sostenidas por la prueba. La prestación de la fianza hipotecaria, según éste, no conllevó una apropiación ni hubo perjuicio hacia su cliente. Concentra el licenciado Córdova González su discusión en el hecho de que no hubo un beneficio económico para su esposa ni para él.

En cuanto al préstamo obtenido de un cliente suyo, donde se ofreció como colateral una propiedad bajo el pro-

cedimiento de quiebra, se alega en el escrito que no hubo violación a la relación fiduciaria abogado-cliente. Sostiene el licenciado Córdova González que las conclusiones del foro federal están viciadas y reflejan el prejuicio y parcialidad del cual ha sido objeto por motivaciones político-partidistas.

Con respecto a las expresiones contenidas en sus escritos y en sus comparecencias ante el Tribunal de Distrito Federal, el licenciado Córdova González aludió a lo siguiente:

> Yo no he atacado a nadie. Solo he *dicho* sino *la Verdad*, respecto a *TODAS* las imputaciones, inclusive la conducta no compatible con la Honorabilidad del cargo de los Jueces aludidos. ... He estado siempre opuesto a la "politización" de la judicatura y la fiscalía. Doce años de lucha abierta, pública y de frente, engendran la "Razón Escondida" detrás del "Opinión" Orden de expulsión vitalicia. Por supuesto *Maravilla* es "La Causa" o razón de ser del "Opinion Order".
>
> ... ¡Es un pecado que se paga con el desaforo el criticar las fallas del Sistema! ¡Intocables, i signo interjecció por lo menos así lo creen ellos. En los Estados Unidos es común, entre los abogados en forma de palique soler decir, "Federal Judges *only* talk with God-to give him advice!"
>
> Específicamente, los Señores Jueces han demostrado perjuicio y parcialidad contra el recurrente, *abusando* impropiamente de sus prerrogativas en el propio y equitativo desempeño de sus funciones, y en deshonra a la "Institución". Han observado en más de una ocasión actitud despectiva, (descortés, resulta poco), e irrespetuosa al cargo que ocupan. Sometemos muy respetuosamente que, *"La Toga No Da Licencia A Ser Tirano"*. (Énfasis en el original.) Escrito mostrando causa de 28 de julio de 1992, págs. 4–5.

A través de su comparecencia ante nos, el licenciado Córdova González consistentemente ha caracterizado su conducta como premeditada, con el objetivo de denunciar o corregir situaciones que considera abusivas o en violación a sus derechos. Sostiene el abogado que no siente remordimiento ni está arrepentido, ya que nunca ha pretendido ser ofensivo o faltarle el respeto al Tribunal.

## IV

Un examen cuidadoso de la opinión del Tribunal de Distrito Federal y de las comparecencias del licenciado Córdova González ante el foro federal y ante nos, revelan que no están en controversia las determinaciones de hecho que describen la conducta en que incurrió el abogado. El licenciado Córdova González cuestiona realmente el proceso mediante el cual el Tribunal de Distrito Federal le impone la sanción de suspensión indefinida, la interpretación que dicho foro hace de la conducta del abogado y de las motivaciones de los jueces durante todo el proceso.

El licenciado Córdova González tuvo una amplia oportunidad de exponer sus planteamientos ante el foro federal y ante esta Curia. En sus escritos ante nuestra consideración, los cuales incluyen una copia de los mismos escritos que presentó ante el foro federal, no logró el licenciado Córdova González rebatir o explicar satisfactoriamente las violaciones éticas imputadas. Sus comparecencias se caracterizan por la narración subjetiva, dirigida a imputarle motivaciones político-partidistas a los jueces participantes en el proceso disciplinario en su contra, tanto en el foro federal como en nuestra jurisdicción. A su vez, el abogado niega haber incurrido en violación ética alguna. Sobre sus expresiones escritas, el abogado intenta explicar o justificar las mismas, aludiendo a su derecho a la expresión.

Conforme fue determinado por el Tribunal de Distrito Federal y confirmado por el Tribunal Federal de Apelaciones, el licenciado Córdova González incurrió en la conducta siguiente:

(1) Bajo su auspicio y con su conocimiento su esposa prestó una fianza hipotecaria, la cual estaba sujeta a la jurisdicción de la Corte de Quiebras. Se obtuvo la libertad de la cliente del abogado, Sra. Irma Cruz Vázquez, mediando como garantía una propiedad de la cual la titular no podía disponer, siendo la transacción nula bajo la Sección 549(a) del Código de Quiebras.

(2) Obtuvo un préstamo de su cliente por la suma de cien mil

> dólares ($100,000) sin informarle a éste que la propiedad ofrecida como colateral o garantía no era suya, sino que era un bien privativo de su esposa; sin informarle que él y su esposa llevaban un procedimiento de quiebra; que la propiedad estaba bajo la jurisdicción de la Corte de Quiebras y no se había aprobado la referida transacción con la propiedad.
>
> (3) Utilizó incesantemente lenguaje mordaz e irrespetuoso contra los jueces y contra los abogados, incluyendo aseveraciones ofensivas y difamatorias.

Los hechos antes señalados reflejan una conducta constitutiva de una desviación de los parámetros mínimos de conducta profesional fijados por nuestros cánones de ética profesional. Atenta dicha conducta contra el Preámbulo del Código de Ética Profesional, en la medida en que allí claramente se explica que "[l]a enumeración de deberes específicos, sin embargo, no deja de hacer mandatorias otras obligaciones no señaladas en este cuerpo de normas y que son inherentes a la resposabilidad social y profesional de los juristas y a la conducta moral que se espera de todo miembro de la profesión". Preámbulo del Código de Ética Profesional, *supra*.

El licenciado Córdova González, mediante su actuación ante el foro federal, ha soslayado "la importancia de evitar aun la apariencia de conducta impropia". Véanse: *In re Pizarro Santiago*, 117 D.P.R. 197 (1986); *In re Félix*, 111 D.P.R. 671 (1981); *In re Maldonado Soto*, 110 D.P.R. 748 (1981); *In re Ayuso Ramírez*, 102 D.P.R. 65 (1974).

A todo abogado sujeto a nuestra jurisdicción le está vedado violar los cánones de ética profesional "aun por medios indirectos o mediante el empleo de terceros". Preámbulo del Código de Ética Profesional, *supra*. A pesar de que fue la esposa del licenciado Córdova González quien prestó la fianza de un cliente con un bien privativo suyo, lo cierto es que el abogado, a través de terceros, permitió que el tribunal actuara confiando en la validez de la fianza prestada. Debió conocer el hecho de necesitar la autorización de la Corte de Quiebras para la referida transacción

que involucraba un inmueble sujeto a su jurisdicción. Esto constituye una violación al Canon 5 del Código de Ética Profesional, *supra.*

La conducta en la que incurrió el licenciado Córdova González, en las tres (3) situaciones señaladas anteriormente, tanto en conjunto como por separado, constituyen una violación al criterio general respecto a los deberes del abogado para con la sociedad, para con los tribunales y al Canon 5 del Código de Ética Profesional, *supra.*

La actuación del abogado en el incidente de la fianza, al igual que mediante sus expresiones en los escritos sometidos al tribunal, denotan una desviación impermisible del criterio general respecto a los deberes del abogado para con los tribunales y una falta de respeto hacia los procedimientos judiciales (4 L.P.R.A. Ap. IX). Véanse: *In re Freytes Mont,* 117 D.P.R. 11 (1986); *Pueblo v. Ruiz Negrón,* 113 D.P.R. 17 (1982); *In re Martínez Rivera,* 106 D.P.R. 239 (1977); *De Latorre v. Alcalde de Carolina,* 104 D.P.R. 523 (1976). Consideramos que en el desempeño de su función como abogado defensor, el licenciado Córdova González incurrió en una práctica que en nada contribuye a defender el buen nombre y prestigio de los tribunales de justicia sino que, por el contrario, socavan la imagen del sistema judicial.

Con respecto al préstamo que obtuvo de su cliente, todas las circunstancias que rodearon dicha transacción nos llevan a concluir que el licenciado Córdova González violó los Cánones 21, 23 y 24 del Código de Ética Profesional, *supra.* Todas las circunstancias pertinentes a la transacción no fueron divulgadas a su cliente. Con ello el abogado quebrantó el cimiento de honradez absoluta sobre el cual descansa la naturaleza fiduciaria de la relación abogado-cliente.([5]) Véanse: *In re Belén Trujillo,* 126 D.P.R. 743

---

([5]) En el esc. 14 de la Opinión del Tribunal de Distrito Federal para el Distrito de Puerto Rico, *In the matter of Antonio Cordova Gonzalez,* Civil No. 91-1595, pág. 14, se hace constar lo siguiente:

(1990); *In re Carreras Rovira y Suárez Zayas*, supra; *In re Guzmán*, 82 D.P.R. 235 (1961); *In re Guzmán*, 80 D.P.R. 713 (1958).

El Criterio General respecto a los Deberes del Abogado para con sus clientes claramente dispone que "[l]a relación de abogado y cliente debe fundamentarse en la absoluta confianza", por lo que "todo miembro del foro legal le debe a sus clientes un trato profesional caracterizado por la mayor capacidad, la más devota lealtad y la más completa honradez". 4 L.P.R.A. Ap. IX. Los actos del licenciado Córdova González también denotan una desviación del ideal representado por este criterio general.

Concluimos que el licenciado Córdova González ha demostrado una falta de respeto hacia el tribunal, violentando abiertamente el Canon 9 del Código de Ética Profesional, *supra*, que le exige a los abogados evitar los ataques injustificados contra los jueces. El hecho de que el abogado

---

"While the Court makes no finding as to whether or not respondent Córdova paid the $100,000 to his client in professional services rendered, whether or not it is still outstanding as claimed by his client,—a matter that should be dilucidated elsewhere—the promissory note transaction, allegedly paid through services,rendered, suggests an attempt to avoid forfeiture of the $100,000 loan from drugs proceeds."

El licenciado Córdova González sostiene que pagó dicho préstamo con servicios profesionales. El cliente insiste en que aún le adeuda dinero. Del testimonio del licenciado Córdova González durante la vista que se celebró en la corte federal, él sostuvo que:

"Mr. Ortiz: Okay. I understand that but what difference is the —— is the taking the money from Johnny when he has been accused and his property has been taken, embargoed by the Federal Government, from paying him the money? You say that he cannot pay the money to you but you can take it from you [sic]?

"Mr. Córdova: Yeah, yeah.

"Mr. Ortiz: OK.

"Mr. Córdova: I can take it from him and use it on my behalf. Okay? If it would have been a crime, you can be sure, sir, that the U.S. Attorney would have already charged me. Okay? I can take loans alleging that that money belonged to Johnny's dealings with the cockfighting rinks [sic] with the shark loan activity, with the gasoline station activity, etcetera, etcetera. *But deep in my heart I knew that everything Johnny had come out of drugs*, and under 881, Title 28, if you do know that, okay ... it's the same thing applies to the banks. Okay? If banks knowing .. that's where the whole thing of laundering drug money comes under 88[sic]. Okay? If you take money and you repay money to a drug peddler, knowing that the money comes from drugs, you are committing a crime. Okay?" (Énfasis en el original.) *In the matter of Antonio Cordova Gonzalez*, supra, pág. 13.

considere que el proceso judicial esté plagado de prejuicio, parcialidad o fuese discriminatorio, no le concede una licencia para utilizar sus escritos y comparecencias como medio de difamar y atacar personalmente a los jueces. Tampoco le concede inmunidad para utilizar un vocabulario que denigre la dignidad de los miembros del foro judicial. Con las imputaciones orales y escritas sobre hechos inmorales o ilegales no respaldados ni acompañadas con prueba que sea admisible, el licenciado Córdova González ha atentado no sólo contra los jueces, sino contra la dignidad del tribunal. *In re Martínez Texidor*, 130 D.P.R. 905 (1992); *In re Cardona Álvarez*, 116 D.P.R. 895 (1986); *Pueblo v. Susoni*, 81 D.P.R. 124 (1959); *In re Andréu Ribas*, 81 D.P.R. 90 (1959); *De Latorre v. Alcalde de Carolina*, supra; *In re Vázquez Suárez*, 83 D.P.R. 724 (1961); *In re Pagán Hernández*, 105 D.P.R. 796 (1977); *In re Martínez, Jr.*, 108 D.P.R. 158 (1978); *In re Pagán*, 116 D.P.R. 107 (1985); *In re Vázquez Báez*, 110 D.P.R. 628 (1981); *Garán Santiago v. Acosta*, 104 D.P.R. 321 (1975); *In re Martínez Rivera*, 106 D.P.R. 239 (1977), entre otros.

Esta actuación constituye, además, una violación al criterio general respecto al deber del abogado en relación con sus compañeros, su profesión y los Cánones 29, 35 y 38 del Código de Ética Profesional, *supra*. Refiérase a *In re Clavell Ruiz*, 131 D.P.R. 500 (1992); *In re Córdova González*, 125 D.P.R. 555 (1990); *In re Ríos Lugo*, 119 D.P.R. 568 (1987); *In re Roldán Figueroa*, 106 D.P.R. 4 (1977).

Precisamente, el 1ro de marzo de 1990 el licenciado Córdova González fue amonestado por utilizar un lenguaje ofensivo y desconsiderado hacia los abogados de la parte adversa en un caso civil donde él era parte demandante. *In re Córdova González*, supra. En aquella ocasión consideramos que "el vocabulario utilizado no aporta[ba] nada al decoro y deferencia que merecen los tribunales y que el mismo resulta ofensivo y de falta de consideración a los

abogados de la parte contraria".[6] Luego de evaluada la conducta del licenciado Córdova González a la luz de todas las circunstancias, en aquella ocasión nos limitamos a solamente amonestarlo por su conducta impropia. Ahora bien, se le apercibió que de repetirse dicha conducta, estaría sujeto a sanciones más drásticas.

El licenciado Córdova González nuevamente ha utilizado un lenguaje inapropiado en sus escritos. Para justificar su proceder, reitera su derecho a la expresión. En *In re Cardona Álvarez*, supra, explicamos que " 'cuando se habla de respeto al magistrado, no se quiere dar una regla escolar de buena educación o urbanidad, sino significar una obligación, que por lo demás es recíproca, de respeto a la justicia y de respeto a la defensa. El abogado puede no expresar estimación al magistrado, pero está obligado a respetarlo' ". (Énfasis suprimido.)[7] No podemos tolerar que el abogado convierta sus escritos ante el Tribunal en editorial de ataques personalistas con tónica revanchista y difamatoria.

En resumen, la conducta en la que ha incurrido el licenciado Córdova González, que conllevó su separación de la práctica de la profesión en el foro federal *constituye, a su vez, una conducta que viola los Cánones del Código de Ética Profesional en nuestra jurisdicción.* Ante ello, *procede que se separe indefinidamente al Lcdo. Antonio Córdova González del ejercicio de la profesión de la abogacía y de la notaría en Puerto Rico y se ordene que su nombre sea borrado del Registro de Abogados admitidos.*[8]

*Se dictará sentencia de conformidad.*

El Juez Presidente Señor Andréu García y el Juez Aso-

---

[6] *In re Córdova González*, supra.

[7] R. Bielsa, *La Abogacía*, Buenos Aires, Ed. Abeledo-Perrot, 1960, pág. 240, según citado en *In re Cardona Álvarez*, 116 D.P.R. 895, 906 esc. 3 (1986).

[8] Otras quejas de conducta profesional contra el licenciado Córdova González pendientes ante este Foro se unen a su expediente personal.

ciado Señor Negrón García se inhibieron. El Juez Asociado Señor Rebollo López no intervino.